# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

REBECCA L. WOJAN,                                    Case No. 07-11544

     **Plaintiff,**                                   Hon. Victoria A. Roberts

v.

**ALCON LABORATORIES, INC.**

     **Defendant.**

---

## OPINION AND ORDER

### I.    INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment.

The Court **DENIES** Defendant's motion.

### II.    BACKGROUND

Plaintiff Rebecca Wojan brings this action against her former employer,

Defendant Alcon Laboratories, Inc. ("Alcon"). Plaintiff began working for Defendant on

August 20, 2001 as a Glaucoma Sales Representative ("GSR") in the Detroit territory.

She worked from a home office. Several months after she started, Plaintiff made a

lateral transfer to the position of Medical Sales Representative ("MSR") for the same

territory. She worked in conjunction with Jeff Dann, who became the GSR. As a GSR,

and later as an MSR, Plaintiff was responsible for specific drugs within her territory.

During the relevant time period, Plaintiff was responsible for Vigamox, Travatan,

Patanol, TobraDex and for part of 2005, a newly launched product, Nevanac. Plaintiff's

1

job duties included meeting with physicians and office staff to discuss the benefits of Alcon products. The goal was to increase the number of prescriptions for Alcon products written by the physicians for their patients. In both positions, Plaintiff also had certain administrative and record keeping duties.

District Manager, Tony Surdyk, was Plaintiff's immediate supervisor throughout her employment. On occasion, Surdyk attended field visits with Plaintiff. He evaluated her performance. Before each field visit, Plaintiff would complete her portion of a field visitation report and Surdyk would complete his portion during and after each visit. Surdyk also provided Plaintiff with a mid-year review and an annual performance evaluation, which included a self-evaluation by Plaintiff.

Tony DiLorenzo was the Regional Director for Plaintiff's territory and also Surdyk's immediate supervisor. DiLorenzo was replaced by John Briggs in December 2005. Plaintiff had limited contact with the regional directors, usually at national sales meetings.

All of the sales representatives were measured in part subjectively (20%), based on their district manager's assessment of their performance, and objectively (80%) by measuring performance by drug/territory against certain sales quotas. Sales representatives were also ranked annually by percentage of achievement to those quotas. In February or March of each year, Defendant assigned an annual market share goal or sales quota to each geographic territory. MSRs and GSRs worked as a team and were expected to reach the shared market share goal. The market share goal was based on the projected growth potential in a given territory; it was generated by Defendant's finance department and regional directors.

During her employment with Defendant, Plaintiff won numerous sales awards and was consistently rated as a high performing employee.  In her 2002 performance evaluation, Plaintiff was rated "GSP" or good solid performance.  GSP is defined as having:

> "achieved or exceeded major Primary Accountabilities and Key Objectives.  Solid work ethic, highly committed, results orientation, teamwork.  Demonstrates solid skills in all areas as appropriate for the position.  Technical knowledge supports achievement of all responsibilities."

She was ranked at 53.  In her 2003 performance evaluation, Plaintiff was rated as GSP+.  That year Plaintiff obtained the highest employee honor, the president's club award, with a ranking of 12 in the nation.  In her 2004 performance evaluation, Plaintiff was rated as GSP.  Plaintiff also was the top winner of the Travatan Blue Physician Contest in 2004.  She was ranked at 23.

On October 25 2004, Plaintiff took maternity leave under the Family Medical Leave Act ("FMLA").  A floater, Jacqueline Schoustal, was assigned to cover Plaintiff's territory.  Mrs. Schoustal was a new representative with no sales experience.

Plaintiff, a new single mother, returned to work on or about January 30, 2005. Upon her return, Plaintiff says both Surdyk and DiLorenzo began making comments regarding her leave.  DiLorenzo told her she had "better not be out there just showing baby pictures, she better be out there selling."  (Wojan Dep. Tr. 85).  She says she also was questioned about the sufficiency of her childcare arrangements and when she was getting married. (Wojan Dep. Tr. 85-86, 88).

In March 2005, Defendant issued its 2005 annual quotas and rankings.  Plaintiff's ranking dropped from 23 to 89.  Because Defendant's fiscal year begins on December

3

1st, the 2005 quotas ran retroactive to December 1, 2004. Consistent with its policy, Defendant did not modify Plaintiff's quota to account for her leave. Plaintiff complained to Surdyk that the quota was unfair because she was out of the territory for three months on maternity leave. She also complained that the quota was unusually challenging and designed to set her up for failure. In June 2005, Plaintiff reiterated to Surdyk that she felt she was targeted and penalized for taking maternity leave. She again stated that the maternity leave penalty and the rigidity of the quotas set her up to fail. Mr. Surdyk did not report her complaints to Human Resources.

In October 2005, Plaintiff was placed on a 90-day performance improvement plan ("PIP"). Nikki Roblow, a human resources generalist, assisted Surdyk with the development of the PIP. Plaintiff later complained about the PIP, stating it was unfair because the quotas were so high. Plaintiff also complained that male representatives who did not make quotas were not placed on PIPs. In December 2005, Briggs, Surdyk and Roblow decided to terminate Plaintiff, although it was not carried out at that time. Neither Briggs, nor Roblow were aware of Plaintiff's FMLA leave or her discrimination complaints. In January 2006, Plaintiff asked Surdyk to extend her PIP; he denied the request.

At the beginning of March 2006, Defendant issued its 2006 annual quotas and rankings. Plaintiff ranked 75. The December 2004 and January 2005 sales numbers were used to partially evaluate Plaintiff's 2005 performance.

Plaintiff was terminated on March 9, 2006.

Plaintiff filed this action alleging: Count I - sex discrimination in violation of the Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L. §37.2201, *et seq.*; Count II - marital

status discrimination in violation of the ELCRA; Count III - retaliation and interference in violation of the FMLA; Count IV - violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140 et seq; and Count V - retaliation under the ELCRA. The parties stipulated to dismiss Count IV. (See Order, Docket No. 41.) Defendant seeks summary judgment on the remaining claims.

## III.    STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for

5

discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6ᵗʰ Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6ᵗʰ Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party meets its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

## IV.     BURDEN SHIFTING FRAMEWORK

Michigan courts apply the *McDonnell Douglas* burden shifting approach to claims of discrimination. *McDonnell Douglas Corp v Green*, 411 US 792 (1973). *Dubey v Stroh Brewery Co*, 185 Mich. App. 561, 563 (1990). Once plaintiff has proven a *prima facie* case by a preponderance, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* Once defendant meets its burden, plaintiff then has the burden to show by a preponderance that the purported legitimate, nondiscriminatory reason was merely a pretext for discrimination. *Id.* In order to prevail, a plaintiff must prove that her protected status was a motivating factor in the employer's decision. *Town v Michigan Bell Telephone Co.,* 455 Mich. 688, 697 (1997).

A plaintiff can establish pretext in three ways: (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision. *Dubey,* 185 Mich. at 565-566

Pregnancy discrimination claims can be based on a theory of disparate treatment or disparate impact. *Smith v Goodwill Industries of West Michigan, Inc.,* 243 Mich. App. 438, 450 (2000). "A claim of disparate impact involves 'employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.'" *Id* at 450-451 (*quoting Farmington Education Association v Farmington School District*, 133 Mich. App. 566, 571 (1984)). To prove disparate treatment, a plaintiff must show that the defendant had a discriminatory motive. *Id.* at 451.

## V. ANALYSIS

### A. PLAINTIFF RAISES A GENUINE ISSUE OF FACT ON HER FMLA CLAIMS

There are two theories of recovery under the FMLA–the "interference" (or "entitlement") theory and the "retaliation" theory. Plaintiff asserts her claim under both the interference and retaliation theories. She establishes a *prima facie* case under both theories.

#### i. INTERFERENCE CLAIM

To state a *prima facie* interference or entitlement claim a plaintiff must show that:

> 1) she is an eligible employee; 2) defendant is a covered employer; 3) she was entitled to leave under the FMLA; 4) she gave defendant notice of her intent to take leave; and 5) defendant denied her FMLA benefits to which she was

entitled.

*Hoge,* 384 F.3d at 244; *Cavin v Honda of America Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). The fifth element of an interference claim can also be that the employer has "somehow used the leave against her and in an unlawful manner, as provided in either the statute or regulations." *Bradley v Mary Rutan Hosp.*, 322 F. Supp. 2d 926, 940 (S.D. Ohio 2004). The Court finds that Plaintiff raises a genuine issue of material fact on her FMLA claim under the interference/entitlement theory.

Under 29 C.F.R. §825.220(c), employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions. This negative-factor analysis is applicable in analyzing an interference claim. *Brenneman v Medcentral Health Sys.*, 366 F.3d 412, 422 (6th Cir 2003). If an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled. An employer's intent is not directly relevant to the entitlement inquiry. *Edgar v JAC Prods.*, 443 F.3d 501, 507 (6th Cir. 2006). However, "interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Id.* at 508 (citing Arban v. West Publ'g Corp., 345 F.3d 390, 401 (6th Cir. 2003).

Here, Plaintiff clearly satisfies the first four prongs of the prima facie case. The parties do not dispute that Plaintiff Wojan is an "eligible employee" or that Defendant Alcon is a covered "employer" under the FMLA. Likewise, the parties don't dispute that Plaintiff was entitled to FMLA leave and gave Defendant notice of her intention to take

8

leave.  It is uncontroverted that Plaintiff took 12 weeks of qualifying FMLA leave and

was restored to her same position upon her return to work.  The problem, Plaintiff says,

is that  Defendant held her to the same quota and evaluated her performance during the

time she was absent on FMLA leave.  That absence caused her to have a poor

performance score. The poor performance score caused her to be placed on a PIP.

And, her PIP status affected her ability to improve her performance score.  Hence,

Plaintiff says the initial violation set in motion an unbroken chain of events resulting in

her termination.

The Sixth Circuit accepted the same argument in *Wysong v Dow Chemical Co.*,

2007 U.S. App. LEXIS 22975 (6th Cir. 2007).  In *Wysong*, the plaintiff appealed a district

court judgment granting summary judgment for her employer on her claims under

FMLA.  The plaintiff argued she was wrongfully terminated in 2003 for taking a prior

authorized FMLA leave in 2002.  In 2003, the defendant placed the plaintiff on leave

after its company doctor issued severe work restrictions for her due to a chronic neck

injury.  These restrictions were based, in part, on the doctor's knowledge that she had

taken significant leave in the past.  The work restrictions prevented her from working.

Because she was not reporting to work, the defendant fired her.  The defendant argued

that its company doctor properly considered the plaintiff's prior 2002 absences in

developing her restrictions, because he did not write the restrictions solely on the basis

of those absences. The appeals court disagreed.  Despite noting that intervening events

happened between plaintiff's leave in 2002 and her termination in 2003, the *Wysong*

court found that the initial issuance of the severe restrictions set in motion an unbroken

chain of events culminating in her termination.  Accordingly, the court ruled that plaintiff

9

met the fifth element of her interference claim. This Court adopts the reasoning of *Wysong*.

Although a year elapsed between Plaintiff's FMLA leave and her ultimate termination, the performance issue which resulted in her termination was based in part, on the score calculated during her absence. Defendant admits that Plaintiff's 2004 and 2005 quotas and performance scores were not adjusted to account for her FMLA leave. Defendant also admits that Plaintiff's sales performance declined because of her absence from the territory during FMLA leave. Thus, it is clear Defendant evaluated Plaintiff, in part, based upon time she was absent on FMLA leave, and took employment action against her based upon that evaluation.

As a legitimate, non-discriminatory reason, Defendant argues Plaintiff was fired due to poor performance. But, Defendant provides a 2007 Incentive Compensation Plan document, which would not be applicable to Plaintiff because it covers periods after her termination date. (See Defendant's Exhibit F). Defendant says that a floater was obtained to cover Plaintiff's territory in her absence. But the floater was not evaluated based on her performance in Plaintiff's territory. Defendant also says that it does not adjust quota for any employee, for any reason, and thus did not act in a discriminatory manner towards Plaintiff when it failed to adjust her quota to account for her FMLA leave.

Defendant's position is in direct contravention of FMLA provisions which prohibit the taking of FMLA leave as a negative factor in employment actions. Moreover as to pretext, Plaintiff presents evidence that she had high performance prior to her leave; that several male sales representatives with worse ranking and performance were not

placed on PIPs or terminated, or once placed on a PIP, were given an extension when they did not successfully complete; and, that other female employees who took FMLA leave to birth children faced similar action resulting in placement on PIP, termination, or both.

A genuine issue of fact is presented here. A jury could reasonably find that Defendant used Plaintiff's FMLA leave against her, at least in part, as a negative factor in evaluating her performance and the terms and conditions of her employment. Defendant's motion for summary judgment on Plaintiff's FMLA interference claim is denied.

## ii. RETALIATION CLAIM

To state a retaliation claim, plaintiff must show that: "1) she availed herself of a protected right under the FMLA; 2) she was adversely affected by an employment decision; and 3) there was a causal connection between her protected activity and defendant's adverse employment actions." *Jeremy v Northwest Ohio Development Center,* 33 F.Supp. 2d 635, 639 (N.D. Ohio 1999). The Sixth Circuit held that the FMLA prohibits employers from taking adverse employment actions against employees based upon the employee's exercise of FMLA leave. *Bryant v Dollar General Corp.*, No. 07-5006 (6th Cir. Aug. 15, 2008). The Sixth Circuit concluded that the FMLA prohibits retaliation for taking leave under 29 U.S.C. §2615, as well as retaliation for opposing a practice made unlawful by the FMLA. *Id.*

Where there is no direct evidence, the *McDonnell Douglas* burden shifting approach applies to FMLA retaliation claims. *Skrjanc v Great Lakes Power Serv. Co.,* 272 F.3d 309, 315 (6th Cir. 2001).

11

Plaintiff says there is direct evidence of retaliation. She says her 2005 quotas and ranking included data from December 2004 and January 2005, when she was absent on FMLA leave.  The PIP was based, in part, on her performance during those months.  Likewise, her termination was tied to failure to meet the PIP.  Plaintiff says this constitutes direct evidence of use of her FMLA qualifying leave in the termination decision.  The Court agrees.

But even if it were not, Plaintiff's evidence also establishes a prima facie case under the *McDonnell Douglas* framework. The adverse actions upon which Plaintiff bases her claim are placement on a PIP and termination.  Plaintiff says the causal connection between her FMLA leave and the adverse actions is supported by: (1) a field visit report in which Surdyk acknowledges that her sales fell due to her absence from the field for three months; (2) plaintiff's deposition testimony that her supervisor told her that her poor performance was due to being out of the field for three months; and (3) another manager, Rossiter's, deposition testimony that she would have made or come close to making all of her market share quotas if her PIP had been extended another 90 days.   Plaintiff argues that the inclusion of sales data from the period when she was on FMLA leave lowered her overall ranking and sales performance for the subsequent year and constituted a negative factor in the resulting adverse employment actions.

The 8th Circuit has held that "a negative review is actionable . . . where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." *LaCroix v Sears*, 240 F.3d 688, 692 (8th Cir. 2000).  Here, the lower sales performance ranking was the reason Defendant

placed Plaintiff on a PIP and ultimately terminated her.

Defendant asserts a non-discriminatory reason for firing Plaintiff – her poor performance.  Plaintiff, says this is merely a pretext.

Plaintiff argues that pretext is established by the temporal element between her leave, her complaints of FMLA violations and discrimination, and her termination.

This evidence raises a genuine issue of fact.  In Plaintiff's Nov. 2001 - Dec. 2002 performance evaluation, Surdyk congratulates her "assertive, positive and professional attitude."  (See Plaintiff's Exhibit B).   In Plaintiff's Nov. 2002 - Nov. 2003 performance evaluation, Surdyk advises Plaintiff that "your style is certainly effective." (See Plaintiff's Exhibit B).  In Plaintiff's Dec. 2003 - Nov. 2004 performance evaluation, Surdyk states:

> "Rebecca, your performance in several Primary Accountabilities is very strong. . . A few areas that stand out are the following. Rebecca your Interpersonal Skills coupled with your competitive business acumen for each and every product is the Trade Mark for Rebecca Wojan. . . Finally and most importantly these excellent behaviors in the Primary Accountabilities drove our ultimate responsibility ... excellent sales results for two of three products.  Your sales performance is strong and is a direct result of solid performance in all the behaviors and activities listed above."  (See Plaintiff's Exhibit B).

He also says:

> "Rebecca, your Enhanced Productivity is also exceeding most sales representatives."  (See Plaintiff's Exhibit B).

As late as March 23, 2005, Surdyk compliments Plaintiff's abilities.  In a field visit report, he says:

> "I know your activity and behaviors are back to the level when you left the territory, yet your sales have slipped during your absence.  As we discussed during this visit and over the phone, don't panic, focus on your solid behaviors (Most Wanted Lists, Utilizing Resources, Assertiveness and Competitiveness).  (See Defendant's Exhibit H).

However, several months later Surdyk's comments on Plaintiff's performance changed

noticeably.  When the PIP issued in October 2005, Surdyk stated that Plaintiff needed improvement in the area of assertiveness/aggressiveness. (See Defendant's Exhibit K). In a November 2005 performance review, Surdyk states that through their monthly field report Plaintiff's overall performance was improving and several areas were in fact "meeting expectations."  Surdyk states, however, "your performance is 'Below Expectations' when you are on a P.I.P." (See Defendant's Exhibit N).  Using this circular logic, a person on a PIP could never work themselves off since no matter how much they improved their performance they would always be rated as below expectations.

Plaintiff presents numerous reference letters from doctors upon whom she called; all praise her performance as a sales representative. (See Plaintiff's Exhibit M).  Plaintiff also presents account call notes, written during her employment and memorializing several conversations with Dr. Tukel, in which he complained about his frustration with the Alcon company for failing to provide funding, study support, and attention from upper-level management. (See Plaintiff's Exhibit G).  This evidence tends to rebut Defendant's claims regarding Plaintiff's poor performance and sales ability in relation to Dr. Tukel's office.

In the aggregate, there is a question of fact whether performance was the true reason for Plaintiff's termination.

### B.     PLAINTIFF RAISES A GENUINE ISSUE OF FACT ON HER ELLIOT LARSEN DISCRIMINATION CLAIMS

The Elliot Larsen Civil Rights Act, M.C.L. §37.2202 (1)(a), prohibits discrimination by an employer on the basis of marital status or sex.  This includes pregnancy, childbirth or any medical condition related to pregnancy or childbirth:

An employer shall not . . .

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.  M.C.L. §37.2201(d).

Plaintiff asserts claims of marital status and sex discrimination, as well as retaliation under ELCRA.  A question of fact exists under all theories.

### i.      SEX (PREGNANCY) DISCRIMINATION

To state a *prima facie* claim of sex discrimination, a plaintiff must show "(1) that she is a member of a protected class, (2) that she suffered an adverse employment action, (3) that she was qualified for her position, and (4) that she suffered the adverse action under circumstances that give rise to an inference of unlawful discrimination." *Saroli v Automation & Modular Components, Inc.,* 405 F.3d 446, 451 (6th Cir. 2005)(*citing Wilcoxon v Minn. Mining & Mfg. Co.,* 235 Mich. App. 347 (1999)). Where a plaintiff does not present direct evidence of discrimination, Michigan courts apply the *McDonnell Douglas* burden shifting approach to such claims.  *Dubey v Stroh Brewery Co,* 185 Mich. App. 561, 563 (1990).   In order to prevail, a plaintiff must prove that her protected status was a motivating factor in the employer's decision.  *Town v Michigan Bell Telephone Co.,* 455 Mich. 688, 697 (1997).  A plaintiff can establish pretext in three ways:  (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision.  *Dubey,* 185 Mich. at 565-566.

Pregnancy discrimination claims can be based on a theory of disparate treatment or disparate impact. *Smith v Goodwill Industries of West Michigan, Inc.,* 243 Mich. App. 438, 450 (2000). Disparate impact results from facially neutral employment practices that have a disproportionately negative effect on certain protected groups and which cannot be justified by business necessity. Disparate impact does not require a showing of discriminatory motive. *Hughley v General Motors*, 52 F.3d 1364, 1370 (6th Cir. 1995). To establish a prima facie disparate impact claim, a plaintiff must demonstrate "that a specific employment practice or policy caused a significant disparate impact on a protected group." *Hartsel v. Keys*, 87 F.3d 795, 801-02 n.4 (6th Cir. 1996). To demonstrate this, a plaintiff is required to present "statistical evidence of systematic discrimination (i.e., a pattern or practice which results in discrimination)." *Hughley*, 52 F.3d at 1370. By contrast, under the disparate treatment theory, a plaintiff must simply show that the employer treats women less favorably than men because of their sex. "Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n.15 (1977).

Plaintiff does not say which theory she asserts. However, she presents no statistical evidence to establish a prima facie disparate impact claim. Accordingly, Plaintiff's claim will be analyzed under the disparate treatment theory. Plaintiff meets the first prong -- that she is a member of a protected class -- by producing evidence that she was pregnant, took maternity leave and gave birth to a child. Plaintiff also meets the second prong -- that she suffered an adverse employment action -- by producing

evidence that Defendant placed her on a PIP and terminated her employment.

With respect to the third prong, Plaintiff asserts that she was well-qualified for the position.  The burden of showing that a plaintiff is qualified can be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field. *Wexler v White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir 2003).  "For purposes of the prima facie case analysis, a plaintiff's qualifications are to be assessed in terms of whether he or she was meeting the employer's expectations prior to and independent of the events that led to the adverse action." *Tysinger v Zanesville Police Dep't*, 463 F.3d 569, 573 (6th Cir 2006).

Plaintiff's tenure at Alcon is telling on this element.  She won numerous sales awards, including the top level President's Club Circle in 2003.  She was ranked above the median prior to her leave.  (See Plaintiff's Exhibit B).   She was never disciplined until she returned from leave.  Thus, contrary to Defendant's assertions, Plaintiff makes a prima facie showing that she was qualified for the position.        A plaintiff satisfies the fourth prong when he or she demonstrates that a "comparable non-protected person was treated better." *Mitchell v Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992).  The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly-situated." *Pierce v Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994).  Plaintiff says there were several male sales representatives who were ranked below the median who were not placed on PIPs or terminated. (Wojan Dep. Tr. 102-103, 117-118; Plaintiff's Exhibit I).

Brian Berrier's PIP was extended after he failed to meet its terms; he was ranked 71. (Wojan Dep. Tr. 126; Plaintiff's Exhibit I). Jeff Brinda was ranked 89 and was promoted to management. (Wojan Dep. Tr. 160; Plaintiff's Exhibit I). Defendant promoted Chad Clatterbaugh and Kemp Schafer, ranked at 86 and 88 respectively. (Wojan Dep. Tr. 161-163; Plaintiff's Exhibit I). Plaintiff's closest competitor, Jeff Dann, with whom she shared a territory, was complimented and promoted despite his 75 ranking. (Plaintiff's Exhibit I and Q).

Plaintiff presents numerous letters of recommendation from doctors upon whom she called; they rebut criticisms of her performance. (Plaintiff's Exhibit M).

Plaintiff also produces testimony that other women faced termination under similar circumstances after taking maternity leave. (Wojan Dep. Tr. 105, 158-159; DiLorenzo Dep. Tr. Plaintiff's 57-58, 81; Exhibit O). As further evidence, Plaintiff presents a sales roster showing that of five women who worked as sales representatives at the district level under Surdyk's supervision in 2005, only one remained in 2007. (Plaintiff's Exhibit P). Taking this evidence in the light most favorable to Plaintiff, she establishes a *prima facie* claim of sex discrimination.

Defendant asserts that Plaintiff was terminated for a legitimate, nondiscriminatory reason – her failure to improve her performance pursuant to the terms of her PIP. Defendant says "even when accounting for any impact of her medical leave," Plaintiff's termination was justified since she failed to meet her quotas. However, this assertion is not supported by Defendant; there is no evidence that the performance scoring was adjusted to redact the period of Plaintiff's absence. In fact, DiLorenzo states that quotas

18

are never adjusted or pro-rated. (DiLorenzo Dep. Tr. 119-120, 123).

Plaintiff says Defendant's reason is a pretext for sex discrimination. Plaintiff produced evidence that at least five similarly situated men, supervised by Surdyk and employed as GSRs or MSRs, retained their employment despite lower scoring/ranking than Plaintiff. Plaintiff also produces evidence that other women were terminated under similar circumstances after taking maternity leave. Thus, even if Defendant's reason has a basis in fact, Plaintiff produced evidence from which a rational trier of fact could conclude that it was not the actual factor motivating the decision to place her on PIP or to terminate her employment.

Plaintiff's evidence is sufficient to survive summary judgment. The Court denies Defendant's Motion with respect to the sex discrimination claim.

### ii.    MARITAL STATUS DISCRIMINATION CLAIM

The ELCRA prohibits discrimination by an employer on the basis of marital status. M.C.L. §37.2202 (1)(d). To state a *prima facie* claim of marital status discrimination, a plaintiff must show (1) that she is a member of a protected class, (2) that she suffered an adverse employment action, (3) that she was qualified for her position, and (4) that she suffered the adverse action under circumstances that give rise to an inference of unlawful discrimination." *Saroli v Automation & Modular Components, Inc.,* 405 F.3d 446, 451 (6th Cir. 2005)(*citing Wilcoxon v Minn. Mining & Mfg. Co.,* 235 Mich. App. 347 (1999)). While the term "marital status" is not defined in the statute, the Michigan Supreme Court has historically defined the term as "whether a person is married." Miller v C A Muer Corp, 420 Mich 355, 363 (1963).

19

Michigan courts apply the same *McDonnell Douglas* burden shifting approach to claims of marital status discrimination. *McDonnell Douglas Corp v Green*, 411 US 792 (1973); *Town v Michigan Bell Telephone Co.,* 455 Mich 688, 697 (1997).

Plaintiff says she was discriminated against because she was a single mother. She offers both direct and circumstantial evidence of discrimination. As direct evidence, Plaintiff cites her placement on PIP and termination for performance issues occasioned by her absence from the sales territory during her FMLA leave. As circumstantial evidence, Plaintiff cites the following: (1) comments made by her supervisors about her pregnancy/childbirth, childcare arrangements and marital status; (2) several male sales representatives with worse ranking and performance were not placed on PIPs or terminated, or were given an extension after being placed on a PIP; (3) other female employees who took FMLA leave faced similar action, resulting in placement on PIP, termination or both; (4) Defendant failed to discipline Surdyk for his failure to follow the company EEO policy by not documenting Plaintiff's discrimination complaints; and (5) Defendant promoted Surdyk and other males despite their failure to meet sales quotas. Plaintiff further says even if Plaintiff's performance issues could be fashioned into a legitimate business reason for her termination, she can establish pretext since many male employees ranked below her were not terminated or even placed on PIPs.

Because Plaintiff belongs to a protected class, her ability to make a prima facie showing hinges on her ability to show that similarly situated individuals were treated differently. To be deemed 'similarly situated,' the individuals with whom the plaintiff seeks to compare her treatment must have: (1) dealt with the same supervisor; (2) been

subject to the same standards; and (3) engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Mitchell v Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1998).

Plaintiff alleges disparate treatment in that Defendant: (1) held her to a quota while she was on maternity leave; (2) placed her on a PIP for poor performance; (3) would not extend her PIP; (4) made negative comments regarding her marital status and child care arrangements; and (5) terminated her. Plaintiff produces evidence of men who had sales performance and rankings lower than hers who were not placed on PIP or terminated. Several of the men, in fact, were promoted. These employees worked for the same supervisor, were subject to the same quota system, and performed similar work duties.

Taking this evidence in the light most favorable to Plaintiff, she established a prima facie case by showing that she is a member of a protected class and was treated differently from similarly situated workers.

Again, Defendant asserts that Plaintiff was terminated for a legitimate, nondiscriminatory reason – her failure to improve her performance pursuant to the terms of her PIP. The Court outlines above why a finder of fact could find this assertion suspect.

Plaintiff's evidence is sufficient to survive summary judgment. The Court denies Defendant's Motion with respect to the marital status discrimination claim.

### iii.     RETALIATION

In order to establish a prima facie claim for wrongful retaliation under ELCRA, a plaintiff must show:

(1) that the plaintiff engaged in a protected activity,

(2) that this was known by the defendant,

(3) that the defendant took an employment action adverse to the plaintiff,

(4) that there was a causal connection between the protected activity and the adverse employment action.

*Meyer v. City of Center Line,* 242 Mich. App. 560, 568-69, 619 N.W.2d 182 (2000).

If the plaintiff establishes this prima facie case, the burden shifts to defendant to produce evidence that a nondiscriminatory reason existed for the adverse employment action. *See Reisman v. Regents of Wayne St. Univ.,* 188 Mich. App. 526, 539, 470 N.W.2d 678 (1991) (per curiam).  If the defendant is able to demonstrate such a rationale, the plaintiff must then be afforded an opportunity to show that the reasons offered were a pretext for discrimination. *See Id.*  Notably, Michigan courts have found federal precedent interpreting Title VII to be "highly persuasive." *See Meyer,* 242 Mich. App. at 569; *see also Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1311-12 (6th Cir. 1989) (stating that "Michigan courts clearly look to Title VII in resolving questions arising under Elliot-Larsen").

Defendant says Plaintiff cannot establish a prima facie case of retaliation, and even if she could she cannot meet her burden to show that the proffered reason was pretextual.  Defendant says Plaintiff makes only conclusory allegations that she complained about her sales quota being discriminatory, but she also complained that a

male colleague's sales quota was unfair. Defendant says these complaints, wholly unrelated to her gender or marital status, do not raise the specter of retaliation. Moreover, Defendant says even if Plaintiff could articulate protected complaints, she cannot establish that the complaints played a significant role in her termination, particularly since the decisionmakers were unaware of her complaints.

The first prong of the prima facie claim is whether Plaintiff's actions invoked the protection of ELCRA. Plaintiff alleges she was retaliated against for these complaints: (1) her quotas were unfair; (2) Defendant targeted her because she took maternity leave; (3) Defendant penalized her for taking maternity leave; and (4) Defendant's actions were discriminatory. (Plaintiff's Dep. Tr. p. 59). Defendant says these complaints are not protected activity.

To qualify as opposition activity, the actions of the plaintiff need not formally invoke the protection of ELCRA. *See McLemore v. Detroit Receiving Hosp.,* 196 Mich. App. 391, 396, 493 N.W.2d 441 (1993); *see also Barrett v. Kirtland Cmty. Coll.,* 245 Mich. App. 306, 318-19, 628 N.W.2d 63 (2001) (noting that employees do not have to "specifically cite" ELCRA to be protected). If an adverse employment decision "is a result of that employee raising the spectre of a discrimination complaint, retaliation prohibited by the act occurs." *McLemore,* 196 Mich. App. at 39. The employee "must do more than generally assert unfair treatment." *Barrett*, 245 Mich. App. At 319. Moreover, to be protected by ELCRA, the employee need not oppose an actual violation; rather, her belief that the opposed practices are unlawful must only be reasonable. See *Johnson v Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000) (an employee is

protected against employer retaliation for opposing any practice that the employee reasonably believes to be a violation).

The first complaint regarding Plaintiff's quota, which is unrelated to her sex or marital status, could be viewed as unprotected inasmuch as Plaintiff also complained about the quotas of a male co-worker. However, it could be viewed as protected because Plaintiff complained that the quota improperly included periods during which she was off on qualifying FMLA leave. The second, third and fourth complaints could also be viewed as protected since they specifically raise the specter of discrimination based on sex/pregnancy. Plaintiff's complaints, all which could be reasonably viewed as opposing illegal activity, are appropriately left to interpretation by the trier of fact.

As to the second prong, Defendant knew or should have known that Plaintiff was engaging in a protected activity. Surdyk admits Plaintiff complained that her absence from the territory during her maternity leave was the reason for her poor sales and that she thought it was partly discrimination. (Surdyk Dep. Tr. 202, 285). He also recognized she was making a complaint of discrimination. (Surdyk Dep. Tr. 284-285).

As to the third prong, Plaintiff clearly suffered an adverse employment action; Defendant placed her on a PIP and ultimately terminated her. Since Plaintiff establishes the first three prongs, Plaintiff must demonstrate causation to make out her prima facie case.

"To demonstrate causation, Plaintiff must show that her participation in activity protected by ELCRA was a 'significant factor' in the employer's adverse employment action, not just that there was a causal link between the two." *Barrett v Kirtland Cmty.*

*Coll.*, 245 Mich App 306, 316. In order to show a causal connection, a plaintiff must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action. *Allen v. Mich Dep't of Corr.,*165 F.3d 405, 413 (6th Cir. 1999).

While Plaintiff does not present direct evidence establishing a causal link, she does present circumstantial evidence creating a genuine issue of fact. Plaintiff testified that Surdyk's demeanor changed after her complaints, leading to the PIP and ultimately to her termination. (Wojan Dep. Tr. 126). Plaintiff presents a number of performance evaluations which demonstrate that prior to her leave Surdyk complemented her assertive style and sales performance. However, after she complained about quotas and discrimination, Surdyk admonished her assertive personality and was critical of her sales abilities. Surdyk never advised the human resources department or upper-level management about Plaintiff's discrimination complaints, contrary to the company policy. (Surdyk Dep. Tr. 279-280, 284-285; Roblow Dep. Tr. 68; Briggs Dep. Tr. 57, 64). Thus, at the time of Plaintiff's termination, Surdyk was the only management level employee who knew of Plaintiff's discrimination complaints. Briggs and Roblow relied on Surdyk's assessment in making the decision to terminate.

Plaintiff also testified and presented evidence that Brian Berrier, who was also placed on a PIP by Surdyk, did not complain about discrimination and his PIP was extended. Berrier was given the opportunity to meet with DiLorenzo to plead his case for extension of his PIP, while Plaintiff says she was not given the same opportunity. (Wojan Dep. Tr. 126).

Under these facts, a rational trier of fact could draw an inference that Surdyk was motivated to terminate Plaintiff because she complained of sex discrimination and FMLA violations. Plaintiff meets her prima facie case.

Because Plaintiff meets her initial burden under the McDonnell Douglas framework, Defendant must produce a legitimate non-discriminatory reason for placing Plaintiff on a PIP and ultimately terminating her. Defendant alleges that Plaintiff suffered from poor performance upon her return from leave and was placed on PIP following repeated warnings. Defendant further says Plaintiff was fired because she failed to improve after 90 days on the PIP. These allegations of poor performance meet Defendant's burden to show legitimate, non-discriminatory reasons.

Plaintiff argues that pretext is established by the temporal element. Plaintiff says once she returned from leave and complained about discrimination and FMLA violations, Surdyk's demeanor towards her soured. Plaintiff also says that pretext is established based on Surdyk failure to advise Human Resources about her discrimination complaints before placing her on a PIP or recommending termination.

An employer's failure to follow a policy that is related to termination or demotion can constitute relevant evidence of pretext. *Skalka v. Fernald Environmental Restoration Management. Corp.,* 178 F.3d 414 (6th Cir. 1999). Roblow testified that Alcon's managers and supervisors are advised to contact their human resource representative or manager if they get an EEO complaint. (Roblow Dep. Tr. 33). However, at the time of Plaintiff's placement on a PIP, Roblow did not check for FMLA compliance because she was not aware of Plaintiff's FMLA leave or complaints.

(Roblow Dep. Tr. 62). Roblow said she did not have any independent knowledge of Plaintiff's performance and relied on Surdyk's assessment. (Roblow Dep. Tr. 68). Briggs testified that Surdyk did not tell him prior to the termination meeting that Plaintiff complained about Defendant applying her quota during her leave. (Briggs Dep. Tr. 64). If he had known, Briggs said he would not have evaluated Plaintiff for that time period and he would have gone to HR. (Briggs Dep. Tr. 62-64). This evidence is particularly compelling, coupled with Surdyk's testimony that he was told he needed to demonstrate courage in order to advance to senior district manager and that placing Plaintiff on PIP was a demonstration of courage. (Surdyk Dep. Tr. 274-275). While this could be exculpatory evidence as Defendant suggests, it could also be evidence of pretext. That is a determination for the trier of fact.

Plaintiff produced evidence from which a rational trier of fact could conclude that Surdyk purposely failed to disclose Plaintiff's complaints to HR to make it easier to terminate her in retaliation for making the complaints. Plaintiff's evidence is sufficient to survive summary judgment. The Court denies Defendant's Motion with respect to the retaliation claim.

## VI. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **DENIED** in its entirety.

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  September 15, 2008

The undersigned certifies that a copy of this
document was served on the attorneys of
record by electronic means or U.S. Mail on
September 15, 2008.

/s/ Linda Vertriest
Deputy Clerk